We will hear argument next. Case number 23-2357, Alnylam Pharmaceuticals v. Moderna. Mr. Hughes. May it please the Court, Paul Hughes for Appellant Alnylam. This is a claim construction dispute, and as always, the Court should start with the language of the claims. Here, the claim language, read with the whole specification, makes abundantly clear that the heartland of these claims encompasses branched alkyls with two-carbon bonding because the branching occurs at the alpha position. The specification contains... If that's true, what is that definition doing in the specification? Your Honor, the definition, what it's doing in the specification, is it's talking about the underlying science. It functions as a textbook, and the vast majority of times when you have a branched alkyl in an alkyl chain, you have three-carbon bonding. Let me explain just for a moment the science behind that. When you have a branched alkyl that's within an alkyl chain, the thing that's coming into the branch, that central carbon, is a carbon, and then it branches to two carbons. So you necessarily have three-carbon bonding. When you look at the patent, I will acknowledge the vast majority of examples, the overwhelming majority of examples describe a branched alkyl where the branching occurs within the alkyl chain, and in all of those circumstances, you have at least three-carbon bonding. What we are dealing with, though, in Claims 18 and 20 is what I think is an exception to how branched alkyl usually operates, and it's where it's in the alpha position. And the only way you can have a branched alkyl that has two-carbon bonding, it can't be one because you have two branches, the only way that you can have a branched alkyl where you have two carbons is where the branching occurs in the alpha position, because since it's not in the chain... So then just going back to the definition in Column 412, and when I say definition, I'm kind of previewing what I think about Column 412, what work is Prong 1 of that definition doing when it says where the carbon atom is connected to at least three carbons? I mean, we just all agreed that in every other position, it's always going to be at least three carbons, and so the only work that that Prong 1 is doing in the definition is excluding the possibility of three carbons at the alpha position, where normally at the alpha position, you could have two carbons or three carbons. Yeah, I think a couple points about that. When you look at the definitional section as a whole... What is that Prong 1 of the definition Column 412 is doing? No, Your Honor, I think the upshot is... What's the purpose of adding Prong 1 to that definition? I guess that's really what I'm trying to get at. What this is doing is this functions as a textbook. This is giving organic chemistry terms and saying how those terms are meant to be understood and usually used. What's important in the definitional section of Columns 411 and 412, sometimes the patentee says this is what this term means in all places, but for branched alkyl, what the patentee said was unless otherwise specified, which means the patentee knew that there would be times where there's not three-carbon branching, and the only time that can exist is when you have it in the alpha position. So I acknowledge, Your Honor, the majority of the time when you have a branched alkyl, what that term means is three-carbon bonding, and that's what 412 is telling you, just as a textbook would inform you how terms often operate. I guess just to put a finer point on it, wouldn't a skilled artisan reading that Prong 1 of the definition say, okay, this Prong 1 is here, and because they want to exclude two carbons at the alpha position, unless otherwise specified, because otherwise you could just completely remove Prong 1, and there wouldn't be any other difference to the basic background understanding of a branched alkyl. Well, Your Honor, I don't think that these broad definitions are meant to have a strictly limiting sense. What they're designed to do is provide base understanding of what these terms mean as a general matter. And I think if I can point the court to Formula 2. Formula 2, I think, is very helpful to illustrate the point, if I may, Your Honor. Formula 2 is at the very beginning of the specification. It begins at the bottom of Column 3, and the formula is at the top of Column 4. What's really important about Formula 2 to start with, at the Column 3 lines 64 and 65, it describes a branched alkyl at the alpha position. So this is our unique circumstance here. It's using the language branched alkyl. It's in the alpha position. And then if you turn to Column 5, first line, Column 5 says M1 and M2 are each independently a biodegradable group. And the second listed example is COO. Now, COO is what is required by our dependent claim 20. One thing, you acknowledge, I think, that Formula 2 is not within the claim, right? Let me be precise about that. Why is that? Well, two responses, Your Honor. That's actually, I think, a little inaccurate, and let me be very precise about this. There is overlap of things that are within Formula 2 are within the claim, but there are things that are within Formula 2 which are outside the claim, and there are things that are in the claim that are outside Formula 2. The distinction is the carbon weight, and I can talk about the carbon weight between the R13 and then the whole tail, the R12, the M, and the R13. Let's try it a different way then. I heard a lot of some parts inside, some parts outside. There's no embodiment of Formula 2 that you could create based on all these different variables that would fall within the scope of any of these assertive claims. No, absolutely there is. There is. There are many, probably most of the, well, many of the embodiments that you would claim, that you would create in Formula 2 fall within. So if you have a branched alpha, you know everything in Formula 2 is branching at the alpha position. You have a COO. The two biodegradable groups that are claimed in 18 are OCO and COO, which are the first two that are described. The distinction, Your Honor, is the carbon weight for the R13 and the tail. Why does your footnote 9 at Blue Brief 18 say, while Formulas 1 and 2 fall outside the assertive claims? Your Honor, I think that was a bit imprecise because there are aspects of Formula 2 that fall outside if it has too many or too few carbons. But much of what's in Formula 2 is within claim scope. But my second point is even if the court, I'm proffering that's correct, and I can provide a letter to the court if it would be helpful, some more explanation as to why that's correct. But my second point, which is sort of independent from that, is what Formula 2 is doing is using the term branched alkyl in a specific context. That's the alpha position. And the point I really want to clearly make for the court is when you look at the formula that's at the top of column 4, here are the things that are true about this and are identical to our patent. If you look at the top right portion, the M1, that's the biodegradable group. That's the ester. We know from lines 2 of column 5 that that ester includes a COO. That means the last atom of the ester is an oxygen. Then when we look to see where that branches, you have the branching to the R and to the Z. Those are the two carbons. Now, my friend, when he talks about what claim 20 does or the possibility of how you have three-carbon branching in the context of COO, the sole argument they have is, well, there could be three branches, and that's how you get to the three carbons. But this figure actually draws in the hydrogen. It draws in the hydrogen to say it's just two branches, and usually when you don't have, as the court knows, and this is my friend agrees at footnote 5 of his brief, and this is at the appendix page 4,949, usually in these drawings if you don't have a bond that's drawn, you assume it's a hydrogen. Let's just take your footnote in your blue brief at its word, that this formula, you know, versions, all versions of this formula fall outside the scope of the asserted claims. And let's also accept that what is being disclosed here in this formula, at least for purposes of just narrowly spotlighting the alpha position, is something that encompasses a secondary carbon. I guess the question still remains, why would it be wrong to look at this patent as saying, okay, at 412 it's making a proclamation of what branched alkyl means, and it is saying in all contexts branched alkyl requires three carbons at the alpha position unless otherwise specified. And then here we can deduce that formula 2 can encompass a branched alkyl at that alpha position that's a secondary carbon, two carbons. But because formula 2 is outside the scope of the asserted claim, it only changes the meaning of branched alkyl for purposes of formula 2. For that particular instance in this endlessly long spec, that branched alkyl can include a secondary carbon, but in all other instances unless, again, further specified in some other part of the spec, you have to go with the three carbon. Well, I think I agree with most everything of what you said, Your Honor. Other, let me just posit, I don't disagree that this is outside. And again, if the Court would permit, I may want to submit a letter on that. But separately, even if you would take that as assumed, what this shows is how you otherwise specify. It is you don't look at one sentence of the specification and read it in isolation. This is, I guess, a version of what Judge Chen said, which doesn't need to assume your footnote on page 18. And I think this is probably how Chief Judge Connolly viewed this. The definition is really a definition, seriously really a definition. It has an exception. It doesn't apply where it is otherwise specified. There are various ways to otherwise specify. In the claim, you'd need language or necessity that that claim has to cover something. You don't have that. You don't have that even if Formula 2 sometimes would come within the claim. But it doesn't have to, and therefore no necessity in the context of the claim. If I may respond to both of your points there. I mean, I agree that Judge Connolly would have us shoot off a cannon down the middle of Fifth Avenue for us to say otherwise specified. And he rests on, my friends rest on a dictionary definition of the word specified that has more and broader capacious meanings. But that's not how we narrowly look at specifications. The critical question is, what would a person of ordinary skill in the art understand the claim language to do? And to get back to Judge Chen's question, the reason Formula 2 is so important is because it uses branched alcohol. And from the context in which it's used, a person of ordinary skill in the art would know what immediately occurs there is two carbon bonding. What are the two salient attributes of this? It's first, bonding in the alpha position. And second, an ester, where the last atom of the ester is something other than a carbon, COO. Those are the exact two attributes that we have spelled out in claims 18 and 20. And that is why a person of ordinary skill in the art would know this. Every other piece of evidence here in the specification that talks about alpha branching talks about two carbon bonding, not three carbon bonding. My friend has drawn various diagrams in their brief where they show the possibility of three carbon branching. Those are all made up for litigation. None of them actually come from the specification. This is important because it shows the context of what a person of ordinary skill in the art would appreciate. All of the examples, and I point the court to tables 2D and 2E, for example. And if I may just turn to 2E briefly for a moment. What 2E shows is there's only one example of alpha branching. This is at column 74, line 55. And what my friend says about this is, well, in column 2E, there are 15 examples of hydrophobic tails, 12 of which have branching, and only one has alpha branching. And so I'm accused of cherry-picking this from a long list. That is my point, though. This is a unique context, a unique setting, where what 2E shows right here is that you have two carbons, not three carbons, in this context. Because, again, you don't have the triple branching. You have the dual branching. That's the context by which a person of ordinary skill in the art would know that we're talking about something else. Just to be clear, in this section of the patent, which talks about all these different tables and then you're adding all these groups together, there's no combination of 2B, 2C, 2D, 2E, that would result in something that comes within the claims. Is that right? No, Your Honor. It's the first example of 2D. So 2D, column 72. I know, but none of the table 2B linkers is a single central carbon or nitrogen atom. Is that right? Your Honor, I'd have to consult on that. I'm not sure if there's a 2B problem, but I can tell you that 2D and 2E, which is what we're focused on in this claim language, combine exactly for what the claim says. And the claim is... And for that isolated part of the claim. But, again, this is why Formula 2, I think, is helpful. Formula 2 does not shoot the cannon off and say, here, it's two carbons. It is directly known to a person of ordinary skill because of the attributes of alpha branching and the COO as the ester. That is the context that the patentee has made clear, that you know when you're in... Why doesn't Formula 2, what was your expression, shoot the cannon off, whereas the claim doesn't? Because I think the only distinction is Formula 2 has the drawn-in hydrogen, but the point is everything else that we have here shows that there's only two branches. Their theoretical possibility for Claim 3 is that there are three branches, not two branches, has no support in the specification. They can't point to anywhere in the specification where, in the context of alpha branching with a COO ester, there's ever been contemplation that there is three branching to meet the three-carbon limitation that they would impose on this. Every piece of evidence in the specification shows that one skilled in the art would know, otherwise specified. Just to close on this last point, we know that the patentee did not intend for it always to meet three carbons because it used the language, unless otherwise specified. That means there have to be circumstances of two carbons. The circumstances, as Figure 2 makes clear, is alpha branching and with the right ester. Real quick, you have another later continuation patent, do you not, that claims that the alpha position just branching and doesn't use the term branched alkyl? I would have to confirm that, Your Honor. I'll discuss that in rebuttal if I may. That you're suing Moderna in Delaware? Let me confirm that, Your Honor. Okay, thank you. Thank you. Mr. Lampkin, do you know the answer to my question? I do not, but I know exactly what's in there. Someone was nodding. The other case I know about uses the phrase where there is branching at the alpha position or something like that, but doesn't use the term branched alkyl. It says the alkyl branches at the alpha position, something along those lines. May it please the Court, the patent's definition of branched alkyl is unmistakable lexicography. It not only appears in the dictionary section, it not only says branched alkyl and sets it off in quotation marks. It uses definitional phrasing. It says refers to, which is typically something that means it's definitional. And then it provides a clear definition. Two components, one you have to have one carbon bonded to three others, and an exclusion as well. And the qualifier, unless otherwise specified, tells the skilled artisan how to recognize any exceptions. They will be specified, which means it's specific, clear, unambiguous, the type of thing you look at and say, aha, I've been told that the definition doesn't apply here. And they knew how to make something non-definitional, because if you looked at, for example, appendix 257, column 411, lines 40 and 42, that one says that some groups contain a biodegradable include, include, not refers to, for example, illustrative, but not limited to. So it's clear that the patent draftsman knew how to make something non-definitional, but instead here said refers to. And it's important to stick to that definition, because it serves a critical notice function. The skilled artisan is entitled to look at that definition and knows it applies, and knows that if there's going to be an exception, something will specify otherwise, tell them otherwise. And it's very important, especially in this type of claim, because these claims are quite unusual, frankly. Usually when you see this type of claim, you would see a structure, a diagram, and tell you what the substituents can be. But in this one, they chose to describe it using words. But if you're going to use words in the claim to describe a chemical structure, you're going to have to define the words. You're going to have to give them meaning. And the specification here goes and gives us a definition that's absolutely clear beyond doubt, which is you've got to have three carbons to have your patent. I guess one thing that counts against that, and I don't mean to draw a conclusion of whether it sufficiently counts against it, there really isn't anything in this massive spec that shows triple branching at the alpha. Just nothing at all. There are a few triple branches down further in the chain in a few columns. Why wouldn't that, together with what the claim makes absolutely clear, which is that the biodegradable group can have the connector with the oxygen and without the carbon, signal sufficiently to a skilled artisan that the branched alkyl here doesn't have to be tertiary. Well, critically, of course, even if you have branching at the alpha position, you can still have a branched alkyl with three carbons. The skilled artisan would know. That's what I was at least trying to refer to as completely missing from anywhere in this 500 column. The skilled artisan would know that carbon has four bonds, and if you don't dedicate one of those bonds to an oxygen because you have the COO position in your biodegradable group, there's three bonds left, each of which can be occupied by a carbon. But it shouldn't be surprising that we don't have a diagram or an example here because we have a clear definition. We have something better. We don't need an illustration because we know what the words on the page mean. It says you have a carbon, and it's attached to three other carbons. If I can turn for a minute to Formula 2, which my colleague here refers to extensively, when you have lexicography that's so unmistakable, and it tells you a definition, it tells you that it equals, it goes through it with one exception and two clear terms, when you have that and you need to specify otherwise, a formula like Formula 2 can't come close and does not come closer to it, and it doesn't come close for three reasons. I'm sorry. So you're saying Formula 2 itself doesn't otherwise specify? It does not otherwise. Even though it shows all the carbons filled and with only two carbons connected? I think that's correct. What if there was a claim that said whatever else it requires as referenced by Formula 2, in the actual claim language, not just an embodiment, would that be otherwise specified? That would not be otherwise specified, but I'd be down to two reasons rather than three, because the first reason is it doesn't fall within the claims. That's the concession. But it's not just the concession in the blue brief. If you look at Appendix 4496, note 26, there's concession as well. Formula 2 is not the cationic lipids claimed in the acerbic claims, and that's what we've relied on in all our briefing. I think that we should, frankly, be stuck with that. But second, if you look at Formula 2, it allows, but it doesn't require, you to have a secondary rather than tertiary carbon at that M1 or M2 position. It's going to be important that you have an M1 and M2 position, two different biodegradable groups. The fact that you can come up with an example where it would be secondary and, therefore, fall out of the definition doesn't tell the scald artisan the definition doesn't apply. It just means that you could come up with an example. So your view is that embodiment itself is not clear enough to be a 2. Yeah. I'm sorry, just say that again. M1 clearly can be in the COO configuration. That's right. And the H is an H and not a carbon, and that leaves two more. Right. But you couldn't just stop there, Your Honor, because there's two biodegradable groups. There's an M1 and an M2. So to place this figure outside of the claims, you'd have to first say, I'm going to choose a biodegradable group, COO, for M1, and then that will give me two carbons there. But then you have a second chance. There's an M2. I guess what if M2 is also COO? Exactly. So you'd have to do this pick, pick, and choose where you start and say, the first one I'm going to do is... I guess what you must be trying to say is that 4.12 dominates over Formula 2, and so you have to read and understand what's disclosed in Formula 2 through the funnel of the definition in 4.12. I think that's right, and the skilled artisan would have to go and say, look, I'm going to check... But I guess the question is, why is that right? Because Formula 2 says what it says with a hundred different variable offerings. Right. So what you'd have to do in order to get Formula 2 outside of what is a branched algorithm definition is you'd have to do two things. First, for the first one, M1, you'd have to go to that list of non-exclusive list of 22 different biodegradable groups, and you might choose COO. Then you'd have to do that again for M2. A skilled artisan saying, oh, gee, if I gerrymandered a bit that way, if I do a double... I guess I just want to push back on that. So, I mean, just at the bottom of column 3, this is all the descriptions, right? And it says in further environments, M1 and M2 are each independently, they're OCO or COO. For example, they're both COO. Ah, that's a very important point, Judge Toronto, because when it says... Right below it says, in another embodiment, that's the reference to Formula 2. That reference, in a further embodiment, that's talking about Formula 1. Okay. If you back up to Formula 1, which is on column 2, it's actually the reverse. So for Formula 2, you've got to go to column 5 and say M1 and M2 are each, and now there's larger numbers. Well, it's not larger numbers. It never tells you, go ahead and make COO your choice. That's what I mean. There's now a list of many different possibilities, not just the two that are... Exactly. Now, if you flip back to Formula 1, it actually has the reverse structure, so that you have your M, your biodegradable group, on the right, and you have your alpha carbon on the left. Right. They're in the wrong order in that one. Yeah, COO would produce a tertiary carbon. And so it's actually quite telling that when you have Formula 1, where COO produces a tertiary carbon, it says it's permissible to have both of them COO. But when you get to Formula 2, where COO... Hey, can I go back to my question about Formula 2? Let's just assume... I understand you don't think Formula 2 actually shows it. Let's just say, in some universe, it actually does just show the two. I assume you would say, if it actually shows and is an example of an exception to the definition, and there's a claim that specifically says, this claim relates to Formula 2, that would be good enough to show an exception to the definition. Because it is something that's not covered by the definition explicitly, and the claim is explicitly incorporating that. I think, Your Honor, that was certainly a closer case, because it has features that are absent here. One, it has something in the claim itself. We can stop that. I'm going to assume that's the best you can get to a yes. My next question is, because I'm trying to understand it, is what happens if a claim doesn't explicitly incorporate Formula 2, which satisfies the exception requirement, but by necessary inference, has to, because of the structures and stuff. If the answer to the first one is yes, if it's also a necessary inference, even though it doesn't use explicit language, is that good enough? I don't think so, Your Honor, because it comes from the term specify otherwise. It has to specify. It has to make clear. If it's an inference or an implication or suggestion where you're kind of drawing a chain of inferences, that doesn't otherwise specify. But I think we're miles from that. Can I just, because you don't have a minute, Tom. I don't mean to cut you off, but I understand what you're answering. Are there any claims here, in your view, that at least by inference incorporate Formula 2? No, I don't think so, Your Honor. I don't think there are. Is there any way to distinguish? Obviously, it can't be all of them, or at least I don't think it can be all of them. So the only way we could get to somehow Formula 2 relating to specific claims, which none of them say is incorporating Formula 2, is the only way to read those claims, those specific ones that they referred Formula 2. Honestly, I don't follow this science extremely well. I do my best. I thought I heard Mr. Hughes suggesting that there might be specific claims, but I could have got that wrong. So specific claims in this patent that I know of, no. But it's important to keep in mind that this is a continuation of a continuation of a continuation with a shared specification. So when it says things like the present invention, or when it talks about, it has these formulas in it, that does not mean that Claim 18 in particular or its dependent claims necessarily incorporate or necessarily refer to or necessarily reflect anything else in the patent. Those may be in an earlier, claimed in another patent. They may be later for a continuation patent, but it doesn't mean that Claim 18 in particular is going to incorporate Formula 2. Is the logic of their argument that every single claim in this patent would cover the 2 and the 3? I think that's absolutely right, Your Honor. Or at least everything with alpha position branchings, I understand their argument. And I think the real problem with the argument is this. It makes the definition largely irrelevant because if the claim itself is narrow enough that it requires tertiary carbon, you don't need the definition. And I think I heard the argument in essence that because the claims are broad enough to incorporate a 2-carbon, a secondary carbon, that specifies otherwise. Well, that makes the definition irrelevant a second time. It just reads it out, which is why the Court's precedents like Thorner are pretty clear that when a definition, and I'm quoting, makes clear that the invention does not include a particular feature, that feature is deemed outside the claims of the patent even though the language of the claims read without reference to the specification might be broad enough to encompass the feature in question. The whole purpose of that definition is to narrow the claims so that you know you just punch in the definition unless otherwise specified. And there's simply nothing here that otherwise specifies. If I can turn very briefly to, I guess it's 2D and 2E. Again, I think there's two real problems with 2D and 2E, those two tables. And they appear on page 70. Whoops, I'm sorry about that. It's actually pages, appendix 88 to 89. The first is that we still have clear lexicography. None of this is gonna contradict the clear lexicography. But it's especially uninformative for two reasons. First, if you look on page 88 for the appendix and look at the examples for 2D, excuse me, under table 2E, if you look at the very first one right below at the bottom of the page, that's not even arguably branched. So there's no way in which this is saying when you see things in this table, assume that they're branched alcohols. It's simply saying, oh, here's a bunch of representative tails for a very broad invention, not necessarily themed here. And the second problem is to come up with a branched alcohol that only has two carbons. And I use that loosely because it's outside the definition. It wouldn't be a branched alcohol. You have to do a pick and choose again and try and combine from 19 possible biodegradable groups and 15 tails and come up with one that doesn't work. And that's just not something that tells a skilled artisan what a branched alcohol means, especially since table 2E isn't labeled branched alcohol. There's lots of things in there, the vast majority of things in there that aren't branched alcohols at all. And finally, I think one thing that's overlooked in the presentation previously is that the term alcohol itself has an important role. An alcohol is a hydrocarbon. It means carbon and hydrogen only. So if you're trying to ask if something's branched and it's a branched alcohol, you would only look at the alcohol. You'd only look at the carbons and hydrocarbon, excuse me, only look at the carbons. And so if what you get when you do that and you sort of trace your finger through it is sort of a continuous line where you don't have a branching point where you have to split off, that's not a branched alcohol. If there's an oxygen there, you don't count that. That doesn't count. It's just a continuous line. So a branched alcohol is carbons only and you have to find a place where the carbons fork, they split off. And to get that kind of fork, you need a tertiary carbon. You need a carbon attached to three other carbons. Otherwise, you actually just have a chain of carbons maybe attached to an oxygen in the middle, but that doesn't count. It's just a chain of carbons. It's linear. It's not a branched alcohol. If the court has no further questions, I will surrender my remaining 10 seconds to the court. Thank you. Thank you, Your Honor. I'll be brief. As Moderna sees it, the only work that Claim 20 can do is this hypothetical triple branching. But as the court pointed out, there's a lot in the specification, but there is no indication of triple branching at the alpha position. Rather, the patentee made clear throughout, this is in Formula 2, and I think as the court appreciates, Formula 2 can only be fairly read as showing that you can have  two carbon bonding at the alpha position when you have the COO as the ester. Tables 2D and 2E that we describe in our brief, that combination, the only thing that shows alpha branching connected to the COO. Well, can I just, just to see if I'm getting closer to understanding this, I think Mr. Lampkin was concentrating very much on the fact that the biodegradable group, the pool of possible biodegradable groups is quite a large pool for Formula 2. And that is a real problem for reading into Formula 2, something that rises to the level of specifying. Which it might not be if there were only two possible biodegradable groups. Well, Your Honor, I don't think COO can work in Formula 2 under their definition. COO would not be available as an ester under Formula 2, given their understanding of this. So I don't think that argument works for him because the patentee put in COO. And it's the same with 2D and 2E. The first example under 2D is COO. And the only example of a branched alkyl in the alpha position in the menu from 2E is exactly what we've shown where it's two carbons. Then look to the prosecution history. The prosecution history, the patentee gave one very clear example, which he expressly said was within what the invention, this particular invention was to overcome the allowance. The one diagram shows COO with two carbons. Every piece of evidence about what the patentee understood when there are two ingredients. The first ingredient is alpha positioning and the branching of the alpha position. The second ingredient is the COO ester. Every piece of specification evidence we have shows that that is a context that indicates two-carbon branching is appropriate and what the patentee had in mind. We think that's how branched alkyls should be understood. Yes, generally, most of the drawings, it is three bonds because that is typically how branch works in an alkyl chain. But the situation is different when you are at the start of, when it's in the alpha position and you are bonded to something that is not carbon. That is the circumstance. Mr. Lampkin cited a page in the JA saying that your site conceded formula two doesn't come within the scope of the claims. Is that, do you agree with that understanding of the JA site? I don't agree with that understanding, Your Honor. And again, what I'd like to do is take a look at that JA site and perhaps give the court a letter if we think we disagree with that on that point because I don't think we agree that formula two is wholly outside the scope. But if we've made a concession, otherwise I will indicate that. All right. You don't need to send a letter unless we ask for it. Okay. Ultimately, the claim language is what matters. The claim language here has two really important features. The claim language is it's branching at the alpha position and it is the COO is the ester. Every piece of specification makes apparent when those things are present. One skilled in the art would know that two carbon bonding is appropriate. That's the context that specifies here and we urge the court to approve. Thank you. Thanks to all counsel. Case is submitted.